Filed 10/9/23 Mollica v. IGS Solutions CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| SAMANTHA MOLLICA, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> IGS SOLUTIONS LLC, <br><br> Defendant and Appellant. | A164588 <br><br> (City & County of San Francisco Super. Ct. No. CGC-21-589239) |

Defendant IGS Solutions LLC (IGS) appeals the trial court's order denying its motion to compel arbitration of the employment claims brought by plaintiffs and respondents Samantha Mollica and Carissa Timbal. It is undisputed that Timbal never signed an arbitration agreement with IGS. The trial court found that Timbal's claims were severable from Mollica's and not subject to arbitration based on equitable estoppel. The court further found that there was no valid arbitration agreement between Mollica and IGS because the agreement Mollica signed did not identify IGS as the employer and was not signed by IGS or any employer. We agree and affirm.

1

# I.  BACKGROUND

In January 2021, Mollica and Timbal sued Shryne Group, LLC (Shryne) and Stiiizy, LLC (Stiiizy), their purported employer.[1]  After IGS was revealed to be their actual employer, plaintiffs amended their complaint to add IGS as a defendant and dismissed Shryne and Stiiizy.  The amended complaint alleged that in September 2020, Timbal interviewed with IGS and was "hired on the spot" to work as an assistant store manager.  After she was hired, IGS asked Timbal what would come up if it ran a background check on her.  On her scheduled start date, IGS told Timbal not to show up because it was no longer interested in employing her.  Timbal alleged she was wrongfully fired because of her criminal conviction history, and alleged causes of action for negligence, retaliation, violation of the unfair competition law, and wrongful termination against IGS.

Mollica worked at IGS as a "budtender" and then as an assistant district manager.  The amended complaint alleged that in October 2020, IGS fired Mollica after learning that Timbal "was initiating a FEHA-related proceeding against [IGS] for employment discrimination" and that Mollica was assisting her.[2]  Mollica alleged the same causes of action against IGS as Timbal on the grounds that IGS terminated Mollica's employment based on her association with Timbal and opposition to IGS's discriminatory practices against Timbal.  Mollica also alleged causes of action against IGS for various Labor Code violations, including failure to provide rest breaks (Lab. Code,

---

[1] The original complaint alleged that Mollica was hired by Shryne (a cannabis holding company) to work at a retail store operated by Stiiizy (a cannabis lifestyle brand).

[2] IGS alleged that Mollica and Timbal are good friends and that Mollica had recommended Timbal for employment at IGS.

§ 226.7)[3], failure to reimburse business expenses (§ 2802), and failure to pay all wages upon separation (§§ 201, 202, 203).

IGS moved to compel arbitration. Its motion relied on a two-page arbitration agreement that Mollica electronically signed as part of her onboarding process through IGS's online portal.[4] The agreement's letterhead states, "Shryne Group Inc." (Capitalization omitted.) The agreement makes no reference to IGS but states, in relevant part, that "[t]his is an agreement between you (hereinafter 'Employee') and your employer, [__Retail__] (hereinafter the 'Company'), that provides for how employment dispute(s), if any, will be resolved if they cannot be resolved informally." (Bolding omitted.)

The arbitration agreement specifies that "Employee and the Company agree to resolve by final and binding arbitration any dispute, claim, or controversy, including but not limited to those related to Employee's employment with or termination of employment by the Company, its affiliated or managed entities, or their respective officers, directors, employees, or agents." The second page of the agreement has a signature block for "Employee" and includes Mollica's printed name and signature above it. There are no other signatures and no signature block for "Company."

In its motion, IGS argued that although Timbal did not sign an arbitration agreement, she should be compelled to arbitrate because her claims against IGS are intertwined with and cannot be separated from Mollica's claims. In its supporting declaration to the motion, IGS clarified its

---

[3] All further statutory references are to the Labor Code unless otherwise specified.

[4] Although Mollica briefly contends that she does not recall signing this agreement, she does not dispute that she signed it.

relationship to Shryne and explained that it "serves as the Professional Employer Organization [] for [Shryne], along with other Shryne-affiliated entities, and provides payroll processing, document and policy administration, and other administrative services." "IGS is a distinct business from Shryne and the relationship is that of a service provider in the form of employee management services between Shryne and IGS."

Mollica and Timbal opposed the motion. With respect to Timbal, the opposition argued that Timbal never signed an arbitration agreement and never agreed to arbitrate any claims with IGS. With respect to Mollica, the opposition argued that the arbitration agreement was not valid because it did not identify the parties to the agreement, did not reference IGS, and was not signed by IGS (or any other employer). The opposition further contended that the agreement was substantively unconscionable based in part on IGS's failure to sign the agreement.

Following a hearing, the trial court denied IGS's motion. With respect to Timbal, the court held that she never agreed to arbitrate her claims and that her claims were severable and not intertwined with Mollica's claims. Therefore, equitable estoppel did not warrant the enforcement of the arbitration agreement against Timbal as a nonsignatory. With respect to Mollica, the court concluded that the agreement was invalid because "[t]he identity of the 'employer' is unclear and the agreement even lacks an employer signature block." The court relied on *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th, 1 (*Flores*) as support.

IGS timely appealed.

4

## II. DISCUSSION

### A. Standard of Review

" 'In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate "if it determines that an agreement to arbitrate the controversy exists . . . ." [Citation.] "[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . ." [Citation.] In evaluating an order denying a motion to compel arbitration, " ' "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' " ' [Citation.] To the extent the trial court resolved contested facts, we review those determinations for substantial evidence. [Citation.] Finally, should our review of the arbitration provisions here at issue require statutory interpretation, we engage in such analysis independently." (*Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018) 30 Cal.App.5th 970, 977.)

### B. Equitable Estoppel Does Not Require Arbitration of Timbal's Claims.

IGS contends that under the doctrine of equitable estoppel, Timbal, who never signed the arbitration agreement, should be compelled to arbitrate her claims against IGS because they are intertwined with the claims of Mollica, a signatory to the agreement. According to IGS, Mollica and Timbal are friends, and Mollica recommended Timbal for employment with IGS, was involved in Timbal's interview process, opposed IGS's discriminatory practices, and assisted Timbal. Based on these facts, IGS argues that

5

Timbal's claims "are subsumed by the Arbitration Agreement and thus must be arbitrated together" with Mollica's claims. We disagree.

In general, "one must be a party to an arbitration agreement to be bound by it or invoke it." (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.) There are exceptions to this general rule. (*Id.* at p. 765.) One main exception, based on the doctrine of equitable estoppel, provides that "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." (*Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 271.)

In *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239–1240 (*JSM Tuscany*), the court of appeal extended this exception to a nonsignatory plaintiff: "There is no reason why this doctrine should not be equally applicable to a nonsignatory plaintiff. When that plaintiff is suing on a contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." Notably, the court focused on "claims that are dependent upon or inextricably intertwined with the obligations imposed by [a] contract" and concluded that "when nonsignatory plaintiffs are pursuing such claims, they should be bound by the arbitration clause in the contract which is integral to their claims." (*Id.* at p. 1241.)

The equitable estoppel doctrine does not, however, help IGS here. Timbal's claims against IGS are not dependent upon or inextricably intertwined with any obligations imposed by Mollica's arbitration agreement. First, the agreement itself only imposes a duty on Mollica and (arguably) IGS

6

to resolve any disputes related to Mollica's employment (including the termination of her employment) through binding arbitration.[5]  But Timbal's claims against IGS for discrimination and wrongful termination based on her conviction history are in no way *dependent* upon any term of *Mollica's* employment with IGS or any other obligation imposed by the arbitration agreement.  That Mollica may have recommended Timbal for a position at IGS or was involved in interviewing Timbal is irrelevant.  While Mollica and Timbal are certainly witnesses to each other's claims against IGS for wrongful termination and retaliation, this does not mean that Timbal's claims are somehow "subsumed by the Arbitration Agreement" as IGS claims.

Our conclusion is supported by *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209.  There, the court of appeal held that equitable estoppel did not apply if the signatory plaintiffs "do not rely or depend on the terms of the operating agreements in asserting their claims against [the nonsignatory defendants]" and that the [plaintiffs'] allegations "depend solely on the actions of [the defendants], not on the terms of the operating agreements, for their success." (*Id*. at p. 230.)  Similarly, Timbal's claims depend solely on IGS's allegedly discriminatory conduct against her and not on any claims made by Mollica against IGS.  Put another way, even if IGS had not fired Mollica, Timbal would still have the same claims against IGS.

Lastly, we note that the amended complaint also included five causes of action for various Labor Code violations that were brought by Mollica alone against IGS.  This reinforces that Timbal's claims are distinct and severable from Mollica's claims against IGS.  Thus, equitable estoppel does not apply

---

[5] This is contrasted with the real estate purchase contracts at issue in *JSM Tuscany* which imposed independent performance obligations on the parties and also included an arbitration clause.  (*JSM Tuscany, supra,* 193 Cal.App.4th at p. 1226.)

here, and IGS cannot compel Timbal, a nonsignatory plaintiff, to arbitrate claims that are not intertwined with any term found in the arbitration agreement.

C. The Trial Court Did Not Err in Finding the Agreement Invalid as to Mollica.

IGS next contends that the trial court erred in finding that the arbitration agreement was invalid because it did not clearly identify Mollica's employer. IGS argues that it "presented ample evidence that it assented to the Arbitration Agreement" as the employer. Mollica responds that while IGS did not have to sign the arbitration agreement, it still had to establish its intent to be bound by the agreement, which it failed to do. We agree.

As this court previously held, "the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176.) "[I]t is not the presence or absence of a *signature* which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 361 (*Banner*), italics in original.) For example, if the parties to an unsigned contract "ratified the arbitration agreement by repeatedly acknowledging the validity of the contract which contained the arbitration clause," they are bound by that contract. (*Ibid*.) Similarly, an employer's failure to sign an arbitration agreement does not preclude its enforcement where the employer's agreement to arbitrate is evidenced by the use of the employer's letterhead for the agreement and the agreement's reference to the employer by name. (*Davis v. Kozak* (2020) 53 Cal.App.5th 897, 915.)

8

By contrast, an employer who fails to sign an arbitration agreement may not enforce that agreement if there are no other indicia of the employee's agreement to "submit her claims against" that particular employer "to binding arbitration pursuant to its terms." (*Flores*, *supra*, 7 Cal.App.5th at p. 9.) In *Flores*, the arbitration agreement referenced " 'employee and Company' " but did not define either term. (*Ibid.*) In addition, "the signature block for the employer [was] not filled in, dated, or signed." (*Ibid.*) The court of appeal therefore concluded that "the Agreement does not identify with which entity or entities plaintiff had agreed to submit 'all legal, equitable, and administrative disputes' to the AAA for mediation and binding arbitration." (*Ibid.*)

Like *Flores*, we find that the arbitration agreement in this case does not identify IGS as the entity with which Mollica agreed to arbitrate and therefore fails to reflect their mutual assent to arbitrate Mollica's employment claims. The agreement was not drafted on IGS's letterhead, did not reference IGS, and was not signed by IGS or any employer. While we agree with IGS that its signature on the agreement is not required, IGS fails to identify, and we could not find, any cases enforcing an arbitration agreement that *both* failed to identify a party to the agreement and failed to include that party's signature.

Despite this, IGS argues that the arbitration agreement "made clear that [it] was with IGS as the employer." But we find no support for this. The agreement makes no reference to IGS, is drafted on Shryne's letterhead, and defines " 'Company' " or employer as "[__Retail__]." (Bolding omitted.) Regardless of whether these discrepancies were included intentionally or inadvertently, they resulted in an ambiguous agreement that does not

9

identify all of the parties that are agreeing to arbitrate, much less IGS as one of those parties.

Nonetheless, IGS argues that it proffered evidence that it was Mollica's known employer. In support, IGS points to its online onboarding portal for new employees as well as the paystubs it issued to Mollica, both of which contain references to IGS. These references, however, do not evidence an intent by Mollica to arbitrate her claims against IGS.

First, unlike in *Banner, supra*, 62 Cal.App.4th at p. 361, there is no evidence that the parties "repeatedly acknowledg[ed] the validity of the contract." Mollica signed the arbitration agreement as part of her onboarding process. She stated in her supporting declaration that she was surprised to learn of IGS's identity after the complaint was filed. She further stated that "[d]uring the interviewing process, onboarding process, and while working for [IGS], everyone referred to the company as Shryne or Stiiizy." There is no evidence that Mollica and IGS ever discussed this arbitration agreement before or after she signed it.

Second, there is ample evidence that Mollica was not aware that IGS, rather than Shryne or Stiiizy, was her employer. IGS described itself as a "distinct business from Shryne" and that "the relationship is that of a service provider in the form of employee management services between Shryne and IGS." It was therefore reasonable for Mollica to have believed that her employer was Shryne or Stiiizy and that her paystubs were being issued by a third party service provider like IGS. That the arbitration agreement appeared on Shryne's and not IGS's letterhead further supports Mollica's belief that Shryne, rather than IGS, was her employer.

Finally, neither the doctrine of equitable estoppel nor IGS's purported status as an affiliate of Shryne requires Mollica to arbitrate her employment

claims against IGS. To find that Mollica is equitably estopped from refusing to arbitrate or that IGS may enforce the arbitration agreement as an affiliate of a party to that agreement, there must be a valid arbitration agreement between Mollica and another party. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219–1220 ["[A] court, before granting a petition to compel arbitration, *must* determine the factual issue of 'the existence or validity of the arbitration agreement' "].) Because the arbitration agreement *never* identified the other party to the agreement—i.e., Mollica's employer—there is no agreement to enforce here. (See *Flores*, *supra*, 7 Cal.App.5th at p. 9.) Again, that IGS was identified in the onboarding portal or paystubs issued to Mollica does not mean that Mollica agreed to arbitrate her claims with IGS.

Accordingly, we find no basis for compelling Mollica to arbitrate her employment claims against IGS.

### III. <u>DISPOSITION</u>

The order denying IGS's motion to compel arbitration is affirmed.[6] Mollica and Timbal are entitled to their costs on appeal.

---

[6] Because we affirm based on the lack of evidence of a mutual assent to arbitrate, we do not decide whether the arbitration agreement is unconscionable.

11

_____

CHOU, J.

We concur.

_____

SIMONS, Acting P.J.

_____

BURNS, J.

*Mollica v. IGS Solutions* / A164588